# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SHEREE JOHNSON, *et al.*,

    Plaintiffs,

v.

DISTRICT OF COLUMBIA,

    Defendant.

Case No. 17-cv-185 (CRC)

## MEMORANDUM OPINION

In 2015, Towana Johnson was arrested and held in the District of Columbia's Central Cellblock, where she committed suicide in her jail cell. Her four daughters, individually and as representatives of Ms. Johnson's estate, sue the District of Columbia, alleging constitutional and common law violations. The District has moved for summary judgment. Because no reasonable jury could issue a verdict for Ms. Johnson's daughters based on the facts they have presented, the Court will grant the District's motion.[1]

### I. Background

On February 7, 2015, Towana Johnson, under the influence of PCP, was arrested for kicking in a window of her daughter's residence. See Pls.' Opp'n to Mot. Summ. J. ("Opp'n) Ex. D, ECF No. 30-4. After receiving medical treatment for injuries to her leg, she was taken to the District of Columbia's Central Cellblock to await arraignment on misdemeanor charges. Id. At approximately 11:00 a.m. the next day, corrections officers found her hanging from the top

---

[1] The District alternatively moves for judgment on the pleadings. "The standard of review for evaluating a motion for judgment on the pleadings is essentially the same as that for a motion to dismiss." Avery v. United States, 534 F. Supp. 2d 40, 41 (D.D.C. 2008). The Court has already ruled on a motion to dismiss and sees no need to revisit its analysis. Accordingly, because it will grant the District's motion for summary judgment, the Court will deny as moot the District's motion for judgment on the pleadings.

bunk of her cell. See Opp'n Ex. B, ECF No. 30-2. Despite efforts to revive her, Ms. Johnson died by suicide. Id. A prisoner in an adjacent cell later told Metropolitan Police Department ("MPD") investigators that, at some point early that morning, Ms. Johnson had been screaming for her medication, banging on the walls, biting the jail-cell bars, and threatening to kill herself. See Opp'n Ex. C, ECF No. 30-3.

Ms. Johnson's four daughters sued the District of Columbia for damages, alleging common law violations and a violation of her Fifth Amendment constitutional rights. The District moved to dismiss the Fifth Amendment claims. The Court denied that motion, holding that the allegations in the Complaint, accepted as true and with all reasonable inferences drawn in the Plaintiffs' favor, could—if proven—sustain a finding of liability. See Order Denying Partial Mot. to Dismiss ("MTD Order"), ECF No. 7. The parties then entered discovery, which was extended several times. See Dec. 1, 2017 Minute Order; Feb. 2, 2018 Minute Order; Mar. 29, 2018 Minute Order. With the discovery period now closed, the District has moved for summary judgment, contending that Plaintiffs cannot prove their claims.[2] Plaintiffs oppose the motion, which is ripe for the Court's review.

## II. Standard of Review

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] The District has moved for summary judgment on a purported Eighth Amendment claim as well. Because Ms. Johnson was a pre-trial detainee, the Eighth Amendment did not apply to her. See, e.g., Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 152–53 (D.D.C. 2007). Earlier, the District moved to dismiss any Eighth Amendment claim, whereupon Plaintiffs indicated that its inclusion in the Complaint was a typographical error. See Pls.' Opp'n to Mot. to Dismiss, ECF No. 5, at 3. To avoid doubt, the Court dismissed that claim. See MTD Order at 3 n.1. In any event, Plaintiffs have again conceded that they have no Eighth Amendment claim.

R. Civ. P. 56(a). The moving party must demonstrate an "absence of a genuine issue of material fact" in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must accept as true the nonmoving party's evidence and draw all reasonable inferences in their favor, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), but the nonmovant must rely on more than "mere allegations" or conclusory statements, Veitch v. England, 471 F.3d 124, 134 (D.C. Cir. 2006).

### III. Analysis

Plaintiffs concede that they have not proffered sufficient facts to support their common law claims. See Pls.' Opp'n at 6. All that remains, then, is their Fifth Amendment claim for damages under 42 U.S.C. § 1983, which creates a cause of action for state or local officials' violation of federal constitutional rights. Because Plaintiffs seek to hold the District itself liable, they must show both a predicate constitutional violation and an "affirmative link" between that violation and a District "custom or policy," such that the policy itself "was the 'moving force' behind the violation." Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003); see Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978) (holding that a municipality is liable under § 1983 only if its agents committed a constitutional tort pursuant to municipal policy or custom).

First, the predicate constitutional violation: Ms. Johnson's daughters claim that her Fifth Amendment rights were violated by police and correctional officers' "deliberate indifference" to her suicide risk. Allegations of unconstitutional "deliberate indifference" toward the needs of those in jail most often arise in the Eighth Amendment context, which is inapplicable here because Ms. Johnson was a pre-trial detainee. See, e.g., Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 152–53 (D.D.C. 2007). However, "courts have consistently held that the

right belonging to pretrial detainees under the Fifth Amendment is at least as great as the analogous Eighth Amendment right." Hardy v. District of Columbia, 601 F. Supp. 2d 182, 188 (D.D.C. 2009) (internal punctuation omitted). Consequently, the Eighth Amendment "deliberate indifference" standard is instructive here. See, e.g., Powers-Bunce v. District of Columbia ("Powers-Bunce II"), 659 F. Supp. 2d 173, 179 (D.D.C. 2009) (applying Eighth Amendment standard to Fifth Amendment claim of deliberate indifference to pre-trial detainees); Hardy, 601 F. Supp. 2d at 188–89 (same).

"'Deliberate indifference' is a high bar." Richardson v. District of Columbia, 322 F. Supp. 3d 175, 182 (D.D.C. 2018). To establish that Ms. Johnson's Fifth Amendment rights were violated, Plaintiffs must show that officials "(1) subjectively knew [she] was at a substantial risk of committing suicide and (2) intentionally disregarded the risk." Powers-Bunce II, 659 F. Supp. 2d at 179–80 (quoting Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006)). It is not enough to show that officials should have known about a substantial risk; Plaintiffs must show that officials were "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . [drew] the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Second, the District's liability: To hold the District itself liable, Plaintiffs have alleged another type of deliberate indifference—deliberate indifference on the part of the District itself. See Baker, 326 F.3d at 1305–06 (discussing the distinction between the two "deliberate indifference" inquiries). The D.C. Circuit has explained that one way of showing that a District custom or policy was the moving force behind a predicate constitutional violation is to show that the District "'knew or should have known of the risk of constitutional violation,' but did not act." Jones v. Horne, 634 F.3d 588, 601 (D.C. Cir. 2011) (quoting Baker, 326 F.3d at 1306). In this

4

context, knowledge is measured by objective standards, as the inquiry is whether the District knew or *should have known* of the risk. See Baker, 326 F.3d at 1306–07. In such circumstances, if a municipality knows or should know "that its agents will probably violate constitutional rights, [it] may not adopt a policy of inaction." Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).

In sum, to prevail on their § 1983 claim against the District of Columbia, Ms. Johnson's daughters must show two things. First, that she suffered a Fifth Amendment violation due to municipal officials' deliberate indifference to their subjective knowledge of her suicide risk. Second, that the moving force behind this violation was the District's inaction in the face of objective knowledge that its officials would likely violate constitutional rights.

Plaintiffs have offered five pieces of evidence in opposition to the District's motion for summary judgment. First, deposition testimony by Ms. Johnson's daughter, Erica Johnson, detailing Ms. Johnson's arrest. See Opp'n Ex. A, ECF No. 30-1. Second, an MPD "Case Notes" document detailing an interview with Ronald Hunt, one of the corrections officers who found Ms. Johnson in her cell. See Opp'n Ex. B, ECF No. 30-2. The document shows that Officer Hunt indicated that "inmates are suppose[d] to be checked on every 30 minutes and he does not know who had that assignment[, or] . . . . the last time [Ms. Johnson] or any other inmate had been checked on[.]" Id. at 1. Third, an MPD "Report of Investigation" detailing an interview with Iyam Brice, a detainee whose cell was adjacent to Ms. Johnson's. See Opp'n Ex. C, ECF No 30-3. The Report indicates that Ms. Brice heard Ms. Johnson yelling about a need for medication, banging on the wall, biting the cell bars, and indicating she was going to kill herself. Id. at 1. Fourth, the MPD report of Ms. Johnson's arrest. See Opp'n Ex. D, ECF No. 30-4. Fifth,

5

Ms. Johnson's autopsy report, indicating, *inter alia*, that she had PCP in her system. See Opp'n Ex. E, ECF No. 30-5.

All of this evidence addresses the specific circumstances of Ms. Johnson's arrest and suicide. It is doubtful that a reasonable jury could conclude that District officials had subjective knowledge of her suicide risk from the scant evidence Plaintiffs have proffered—which reflects no attempt to, for example, depose officials who interacted with Ms. Johnson or otherwise show subjective knowledge. Even assuming *arguendo* that a jury could draw such an inference from this evidence, Plaintiffs have provided nothing that is probative of a District custom or policy. They have not identified any evidence that could support a jury finding that the District had "actual or constructive knowledge that its agents [would] probably violate constitutional rights" or that it "adopt[ed] a policy of inaction." Warren, 353 F.3d at 39.

Plaintiffs, in opposing summary judgment, do not claim that they have put forth such evidence. Instead, they contend that their "complaint alleges, and there is at the very least a substantial dispute, that it was the District of Columbia that failed to have an appropriate policy in place to address the inmate suicides." Opp'n at 6. Similarly, they maintain that they "further allege that its failure in this regard constitutes deliberate indifference." Id. Allegations suffice at the motion to dismiss stage, and for that reason Plaintiffs' Complaint survived the District's motion to dismiss. See MTD Order. At the summary judgment stage, however, Plaintiffs must show more. Here, they bear the burden of persuasion at trial. After an extended discovery period, the District has moved for summary judgment, seeking to "demonstrate . . . that the [Plaintiffs'] evidence is insufficient to establish an essential element of [their] claim." Celotex Corp., 477 U.S. at 331. In this posture, "if the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to

summary judgment as a matter of law." Id. To defeat summary judgment, Plaintiffs must point to specific facts by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). They have not done so, relying instead on mere allegations and the unsupported contention that there remains a "substantial dispute."[3] That is simply not enough. See Veitch, 471 F.3d at 134.

Plaintiffs have undoubtedly suffered a tragic loss. But, after an extended discovery period, they have not put forth evidence that a District of Columbia custom or policy was the moving force behind their mother's death. Because no reasonable jury could conclude otherwise based on the factual record before the Court, the District is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny as moot Defendant's Motion for Judgment on the Pleadings. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 19, 2019

---

[3] To avoid doubt, the Court will take the most generous view of Plaintiffs' opposition to and construe the "substantial dispute" here as referring to a report that Plaintiffs referenced in their Complaint and included as an exhibit in opposition to the District's Motion to Dismiss. See Pls.' Opp'n to Mot. to Dismiss Ex. A. The report examined suicide prevention practices at the District's Central Detention Facility and noted shortcomings. Even if this were considered part of the summary judgment record, it could at most provide the basis for a jury to conclude that the District had actual or constructive notice of the risk of inmate suicides. It would not permit a jury to conclude that, faced with this notice, the District failed to act, a necessary showing for municipal liability in this context. See Warren, 353 F.3d at 39.